# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| F.C., *by and through his parents*, E.C. and J.C.,<br><br>Plaintiff,<br><br>v.<br><br>MONTGOMERY COUNTY PUBLIC SCHOOLS,<br>MONTGOMERY COUNTY BOARD OF EDUCATION and<br>JOSHUA STARR, *in his official capacity as Superintendent of Montgomery County Public Schools*,<br><br>Defendants. | Civil Action No. TDC-14-2562 |

## MEMORANDUM OPINION

Plaintiff F.C., by and through his parents, E.C. (the "Mother") and J.C. (collectively the "Parents"), brings this action against Defendants Montgomery County Public Schools, Montgomery County Board of Education, and Joshua Starr, the Superintendent of Montgomery County Public Schools (collectively, "MCPS"), seeking reversal of an April 15, 2014 decision by an administrative law judge ("ALJ") dismissing the Parents' due process claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–82 (2012). Presently pending before the Court are the Parents' Motion for Summary Judgment and MCPS's Cross-Motion for Summary Judgment. The Court heard oral argument on the Motions on June 22, 2016. For the reasons set forth below, the Parents' Motion for Summary Judgment is DENIED, and MCPS's Cross-Motion for Summary Judgment is GRANTED.

## BACKGROUND

F.C. is student with disabilities who has attended Rockville High School ("RHS") in Montgomery County and has been eligible for special education under the IDEA. In 2009, MCPS conducted a comprehensive educational evaluation of F.C., including a psychological evaluation, an educational assessment, a speech/language assessment, and an occupational therapy evaluation. Such evaluations are to be conducted every three years, unless the parent and school agree that a reevaluation is not necessary. 34 C.F.R. § 300.303(b)(2) (2015). On May 24, 2012, MCPS convened a Reevaluation Planning and Determination Meeting at RHS attended by F.C.'s mother. At the meeting, the attendees reviewed and discussed existing data relating to F.C., including records of the 2009 evaluation, F.C.'s report cards, and teacher observations. At the conclusion of the meeting, school officials concluded that no new data was needed to determine F.C.'s educational and service needs, that F.C. continued to have a disability, and that F.C. continued to have educational needs that require special education services. No additional evaluations or specialized assessments were ordered.

On January 13, 2014, the Parents requested that MCPS provide F.C. with an independent educational evaluation ("IEE"), at public expense, consisting of a neuropsychological evaluation, a speech and language assessment, and an occupational therapy evaluation, because he had not had an evaluation since May 2009. An IEE is an "evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child." 34 C.F.R. § 300.502(a)(3)(i). By regulation, a student is entitled to an IEE at public expense if "the parent disagrees with an evaluation obtained by the public agency." 34 C.F.R. § 300.502(b)(1). If a parent requests an IEE at public expense, the public agency must take one of three actions without unnecessary delay: (1) ensure that an IEE is provided; (2) file a due process complaint

to defend the agency's evaluation of the student; or (3) show through a hearing why the parent's proposed IEE does not meet agency criteria. 34 C.F.R. § 300.502(b)(2).

On January 28, 2014, MCPS offered to have school personnel conduct a full evaluation, including a psychological evaluation, educational evaluation, speech and language evaluation, and occupational therapy evaluation. The Parents rejected this offer. On January 31, 2014, MCPS reiterated to the Parents by letter that it would conduct an MCPS evaluation of F.C. but declined to fund an IEE.

The Parents filed a due process complaint on February 27, 2014, then an amended due process complaint on February 28, 2014, in which they requested a hearing under the IDEA, Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701–961 (2012), the Education Article of the Code of Maryland, and Title 13A of the Code of Maryland Regulations. They specifically sought an IEE "under the authority of 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502(b)(1) and *Schaffer v. Weast*, 546 U.S. 49 (2005)," based on their "disagreement with MCPS's failure to evaluate" [F.C.] since 2009, in violation of "the federally mandated three-year time period." Pls.' Due Process Compl. Letter at 1–2. During the administrative proceedings, MCPS filed a motion for summary decision, arguing that the Parents were not entitled to a publicly funded IEE because they did not disagree with an evaluation obtained by a public agency, as required by 34 C.F.R. § 300.502(b)(1). On April 15, 2014, after an evidentiary hearing, the ALJ granted MCPS's motion for summary decision. The ALJ concluded that the Parents were not entitled to an IEE at public expense because they did not disagree with an evaluation obtained by a public agency. In so ruling, the ALJ found that the May 24, 2012 Reevaluation Planning and Determination Meeting, at which the participants "reviewed and discussed existing data pertaining to the Student," including "the 2009 assessments, report card data, and teacher

observations," did not constitute an "evaluation" within the meaning of the 34 C.F.R. § 300.502(b). Ruling on MCPS's Mot. Summ. Decision ("ALJ Decision") at 5, 10. The Parents appealed the ALJ's decision to this Court. *See* 20 U.S.C. § 1415(i)(2)(A); Md. Code Ann., Educ. § 8-413(j) (West 2015).

## DISCUSSION

### I. Legal Standards

The Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In doing so, the Court views the facts in a light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), who has the burden of showing that a genuine dispute exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of *material fact*." *Anderson*, 477 U.S. at 247–48 (emphasis in original). A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A genuine issue of material fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248.

In this instance, and in accordance with IDEA procedures, the Parents have appealed a ruling of an ALJ of the Maryland Office of Administrative Hearings. 20 U.S.C. § 1415(i)(2)(A); Md. Code Ann., Educ. § 8-413(j). In reviewing such state administrative decisions, courts are required to "make an independent decision based on a preponderance of the evidence, while

4

giving due weight to the state administrative proceedings." 20 U.S.C. § 1415(i)(2)(C); *Doyle v. Arlington Cty. Sch. Bd.*, 953 F.2d 100, 103 (4th Cir. 1992). Findings of fact of hearing officers are entitled to be considered "*prima facie* correct." *Doyle*, 953 F.2d at 105. However, where the only dispute consists of "legal conclusions to be drawn from those facts, the state administrative officials were in no better position than the district court to make conclusions," so the ALJ decision is subject to *de novo* review. *See Muller v. Comm. on Special Educ. of the E. Islip Union Free Sch. Dist.*, 145 F.3d 95, 102 (2d Cir. 1998). Because the ALJ in this case made findings of fact that were undisputed, the legal conclusions drawn from those facts, including those regarding whether there was an evaluation obtained by a public agency with which the Parents disagreed, are subject to *de novo* review. *See id.*

## II.  The 2012 Reevaluation Planning and Determination Meeting

The ALJ ruled that the Parents did not have a right to an IEE at public expense because they did not meet the prerequisite that they had "disagree[d] with an evaluation obtained by the public agency." 34 C.F.R. § 300.502(b)(1). "The right to a publicly funded independent education evaluation does not obtain until there is a reevaluation with which the parents disagree." *G.J. v. Muscogee Cty. Sch. Dist.*, 668 F.3d 1258, 1266 (11th Cir. 2012); *see Schaffer v. Weast*, 546 U.S. 49, 60 (2005). "The parental right to an IEE is not an end in itself; rather it serves the purpose of furnishing parents with the independent expertise and information they need to confirm or disagree with an extant, school-district-conducted evaluation." *T.P. v. Bryan Cty. Sch. Dist.*, 792 F.3d 1284, 1293 (11th Cir. 2015); *see also Schaffer*, 546 U.S. at 61 (stating that an IEE following parental disagreement with the school's evaluation is necessary to ensure that parents have a "realistic opportunity to access the necessary evidence" and are not left "without an expert with the firepower to match the opposition").

5

In concluding that there had been no public evaluation with which the Parents disagreed, the ALJ found that the May 24, 2012 Reevaluation Planning and Determination Meeting did not constitute an "evaluation obtained by the public agency" with which they could have disagreed. 34 C.F.R § 300.502(b)(1). Although the Parents had originally taken the position, in their due process complaint, that there had been no evaluation since 2009, they now claim in their Motion for Summary Judgment that the ALJ Decision should be reversed because the meeting was in fact an evaluation, while MCPS asserts in its Cross-Motion for Summary Judgment that the ALJ Decision should be upheld because the meeting was not an evaluation. The Motions therefore turn on whether the May 24, 2012 meeting constituted an evaluation.

Although the ALJ found that the existence of "varying definitions of the word 'evaluation' in federal and state regulations are not helpful in deciding if the review of data in May 2012 was an evaluation for IEE purposes," ALJ Decision at 7, it is clear that 34 C.F.R. § 300.15 defines "evaluation" for purposes of Part 300 of Title 34 of the Code of Federal Regulations, including 34 C.F.R. § 300.502(b). "Evaluation" as used in Part 300 is defined as "procedures used in accordance with §§ 300.304 through 300.311 to determine whether a child has a disability and the nature and extent of the special education and related services that the child needs." *See* 34 C.F.R. § 300.15. Sections 300.304 and 300.305 set forth the required procedures for conducting such an evaluation. Evaluators must (1) use "a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child, including information provided by the parent"; (2) use multiple measures and assessments; (3) use "technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors"; (4) "[r]eview existing evaluation data on the child," including information from parents, classroom or state

assessments of the child, and teacher observations; and (5) identify whether and what additional data needs to be obtained and reviewed. *See* 34 C.F.R. §§ 300.304–05; *see also* 20 U.S.C. § 1414(b). Sections 300.306 through 300.311 set forth procedures for specific forms of evaluations, such as determining eligibility under the IDEA or evaluating specific learning disabilities.

Upon consideration of these procedural requirements, it is evident that the May 2012 meeting was not an evaluation under 34 C.F.R. § 300.502(b). The meeting consisted of reviewing 2009 assessment data, report card data, and teacher observations. This activity undoubtedly met one of the requirements for an evaluation, that there be "Review [of] existing evaluation data on the child," including evaluations, "[c]urrent classroom-based, local, or State assessments, and classroom-based observations; and observations by teachers and related service providers," 34 C.F.R. § 300.305(a)(1), and it arguably met the requirement for identification of "what additional data, if any, are needed" to determine whether the child continues to have a disability and what special education and related services continue to be necessary, 34 C.F.R. § 300.305(a)(2). But none of the other required steps for evaluation were conducted. At no time during the meeting did evaluators use "a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child" to assist in determining whether he had a disability and the content of his IEP, nor did anyone use "technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in additional to physical or developmental factors." 34 C.F.R. § 300.304(b). For instance, there were not, as in 2009, "specialized assessments by professionals in the fields of speech/language, psychology, and occupational therapy." ALJ Decision at 5. Thus, the May 2012 meeting did not constitute an "evaluation" for purposes of 34 C.F.R. § 300.502(b).

The Parents' citation of the parallel Maryland regulations, and a 2007 Department of Education letter responding to written questions forwarded by a Senator's office on behalf of an unidentified source, does not alter this analysis. In their Due Process Complaint submitted to the ALJ, the Parents explicitly requested an IEE "under the authority of 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502(b)(1) and *Schaffer*," not the Code of Maryland Regulations. Pls.' Due Process Compl. Letter at 1–2. Thus, the Court's analysis in reviewing the ALJ decision appropriately focuses on the federal regulatory right to an IEE and the applicable federal definition of "evaluation" within the meaning of 34 C.F.R. § 300.502(b)(1). *See* 20 U.S.C. § 1415(i)(2)(A) (stating that parties who appeal an ALJ decision "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section"). Moreover, even upon consideration of the Maryland definition of "evaluation," the result remains the same, because that definition provides that an evaluation includes a review "in accordance with 34 C.F.R. §§ 300.304–300.311," Md. Code Regs. 13A.05.01.03B(25)(b), thus indicating that an evaluation, particularly as the term is used in 34 C.F.R. § 300.502(b), must meet the same requirements discussed above with respect to the federal definition.[1]

As for the Department of Education letter containing the language "the review of existing data may constitute the reevaluation," it specifically provided that its responses constituted "informal guidance" that was not "legally binding." Dep't of Educ. Letter at 4, Pls.' Mot. Summ. J. Ex. A, ECF No. 24-3. Moreover, its responses, considered as a whole, generally

---

[1] Considered as a whole, the Maryland regulations relating to evaluations and the need for an IEE in substance track the federal regulations on this issue. The Parents' reliance on language stating that "to conduct an evaluation" an IEP team conducts a review of existing data, classroom assessments, and teacher observations, Md. Code Regs. 13A.05.01.06C, a process not unlike the one followed at the May 2012 meeting, overlooks the fact that this language falls within the subsection entitled "Review of Assessment Information," a step that is necessarily distinct from the "Initial Evaluation" or "Reevaluation" described in other subsections so entitled. Md. Code Regs. 13A.05.01.06A–E.

8

convey the undisputed understanding that a school district and parents may agree that a review of existing data eliminates the need for a full reevaluation, but does not opine on whether a data review constitutes an evaluation within the meaning of 34 C.F.R. 300.502(b) justifying an IEE at public expense.

The Court's interpretation is bolstered by consideration of other parts of the regulatory regime relating to IEEs. If a parent is entitled to an IEE, "the criteria under which the evaluation is obtained, including the location of the evaluation and the qualifications of the examiner, must be the same as the criteria that the public agency uses when it initiates an evaluation." 34 C.F.R. § 300.502(e)(1). Here, the Parents seek an IEE including "neuropsychological, speech and language, and occupational therapy evaluation, with the occupational therapy testing including both fine and motor and sensory assessments." Pl.'s Due Process Compl. Letter at 1. But under § 300.502(e)(1), if the 2012 meeting were deemed to constitute a public evaluation, any IEE would be limited to the criteria followed at the meeting, at which there were no qualified examiners present who actually conducted neuropsychological, speech and language, and occupational therapy testing, and the procedures were limited to a review of previous assessments, report card data, and teacher observations. Moreover, in the absence of any underlying school-conducted psychological and related evaluations for the independent experts in those fields to consider, the purpose of an IEE, to provide independent expertise with which to confirm or disagree with an extant school-conducted evaluation, would not be served. *See T.P.*, 792 F.3d at 1293. This lack of alignment between the criteria for the 2012 meeting and the proposed IEE further demonstrates that the 2012 meeting did not constitute an evaluation under the relevant regulatory scheme.

Although case law on this point is limited, the most analogous federal case is consistent with this interpretation. In *Krista P. v. Manhattan Sch. Dist.*, 255 F. Supp. 2d 873 (N.D. Ill. 2003), where a child had been evaluated multiple times for special education services but not granted such services, and the parents later requested a reevaluation, the school district convened a team of educational professionals that reviewed the data from prior evaluations, the child's grades and test scores, and teacher observations and concluded that no reevaluation was warranted. *Id.* at 876, 879. When the parents then sought an IEE at public expense, rather than challenging the school's decision not to conduct its own reevaluation, the court concluded that parents were not entitled to an IEE because "there was no evaluation" with which the parents had disagreed, as required for an IEE, and the review team's work did not constitute an "evaluation" for purposes of 34 C.F.R. § 300.502(b). *Id.* at 881, 889. Likewise, the May 2012 meeting, which consisted of comparable activities, did not constitute an "evaluation" with which the Parents disagreed, as necessary to trigger the right to an IEE at public expense.[2] Indeed, in their Due Process Complaint, the Parents acknowledged that there had been no evaluation in May 2012 when they disagreed with MCPS's "failure to evaluate" F.C. within the "federally mandated three-year time period," asserted that "MCPS last completed a comprehensive evaluation of [F.C.] in the Summer of 2009," and argued that "MCPS should have completed a new evaluation of [F.C.] by the Summer of 2012." Pls.' Due Process Compl. Letter at 2.

Finally, this interpretation does not prevent parents from obtaining an IEE at public expense. Notably, there is an established means by which to obtain a reevaluation or an IEE, which the Parents did not follow in this case. If the Parents believed that a reevaluation was

---

[2] The Parents' citation of *M.Z. v. Bethlehem Area School District*, No. 11-2313, 2011 WL 2669248 (E.D. Pa. July 8, 2011), is unpersuasive. There, although the court held that an IEE was required, the underlying "evaluation" with which the parent had disagreed was a psychological evaluation, not simply a meeting to review data. *Id.* at *1–2.

needed, either because there had been no reevaluation within three years, as required by 34 C.F.R. § 300.303(b)(2), or because they disagreed with the conclusion that no additional data was needed to assess F.C.'s disability or educational needs, they could have requested a reevaluation from MCPS and, if denied, file a due process complaint. *See* 34 C.F.R. §§ 300.303(a)(2), 300.305(d)(2), 300.507(a); *see also* Md. Code Regs. 13A.05.01.06E(1)(b), 13A.05.01.15C(1). Indeed, when the Parents wrote to MCPS requesting an IEE on January 13, 2014, MCPS offered to provide a school reevaluation, including the psychological, education, speech/language, and occupational therapy evaluations the Parents sought. Had the Parents allowed such a reevaluation to proceed and disagreed with the results, they could then have requested an IEE at public expense under 34 C.F.R. § 300.502(b)(1). But they refused the school reevaluation and persisted in pursuing an IEE. In *G.J.*, where the parents had refused to consent to a reevaluation, the court held that "[b]ecause no revaluation had taken place due to the parents' refusal to consent," the district court "correctly determined that the statutory provisions for a publicly funded independent educational evaluation never kicked in because no reevaluation ever occurred." *G.J*, 668 F.3d at 1266. Having refused to follow the established procedure of first allowing the school to conduct its reevaluation, the Parents cannot now obtain the requested relief. *See id.*

### III. Other Grounds for Relief

Beyond arguing that there was a school evaluation on May 24, 2012, the Parents raise three other arguments in support of their claim that summary judgment should be granted in their favor: (1) MCPS waived its ability to contest the Parents' entitlement to an IEE; (2) the ALJ erred in not considering any evidence submitted by the Parents; and (3) the Parents are entitled to equitable relief because MCPS failed to conduct a reevaluation.

First, the Parents assert that once they requested an IEE at public expense, MCPS was obligated either to file a due process complaint to defend its evaluation or fund the requested IEE. Generally, when parents request an IEE, the school must either provide it or "[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate." 34 C.F.R. § 300.502(b)(2)(i). However, the right to an IEE arises "if the parent disagrees with an evaluation obtained by the public agency." *Id.* § 300.502(b)(1). As discussed above, there was no evaluation with which the Parents could disagree, and thus no evaluation for MCPS to show to be appropriate in a due process hearing. *See G.J.*, 668 F.3d at 1266. MCPS was not obligated to file a due process to defend a nonexistent evaluation. It has not waived any rights in this regard.

Second, the Parents assert that the ALJ inappropriately failed to consider any evidence they submitted. Specifically, the Parents assert that the ALJ should have considered the Mother's affidavit stating that she disagreed with the decision at the 2012 meeting not to conduct updated assessments. In her Decision, the ALJ observed that she admitted several of the Parents' exhibits "but did not consider them in this decision." ALJ Decision at 3. Likewise, she heard testimony from the Mother, a resource teacher, and an expert in special education "but did not consider it in this decision." *Id.* at 4. In rendering her Decision, the ALJ concluded, "The Mother's agreement or disagreement with the outcome of the meeting, while disputed, is not a *material* fact." *Id.* at 6 n.3 (emphasis in original). The ALJ did not err in not considering the Mother's disagreement with the May 2012 decision not to conduct updated assessments because it was not relevant to the outcome. Any such disagreement would have led to a requirement that MCPS conduct a reevaluation, 34 C.F.R. § 300.303(a), which MCPS in fact offered to initiate, but the Parents would have to receive that MCPS evaluation and disagree with it in order to have a right to an IEE, 34 C.F.R. § 300.502(b)(1). Here, the ALJ correctly found that the May 2012

meeting did not constitute an MCPS evaluation that would trigger this right. Therefore, the Mother's disagreement with the results of the 2012 meeting would have no impact on the disposition of this case, and there was no need to consider it.

Third, the Parents assert that this Court should order MCPS to fund an IEE as a form of equitable relief for MCPS's failure to conduct a reevaluation. To support this proposition, the Parents cite a provision within the paragraph of the IDEA providing for judicial review which states, "In an action brought under this paragraph, the court basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). At least one court has invoked this provision to require a school district to pay the cost of an IEE when there was no statutory right to an IEE because the school district had not conducted an evaluation with which the parent could disagree. *L.A. Unified Sch. Dist. v. D.L.*, 548 F. Supp. 2d 815, 823 (C.D. Cal. 2008). In *D.L.*, the court considered "the conduct of both parties" and ordered the school district to pay for a previously conducted IEE because it had been obligated to conduct its own evaluation based on the child's observable behavioral issues, coupled with the parent's repeated requests for an evaluation the school district, but failed to agree to do so until after the due process complaint was filed. *Id.* at 822.

Here, it is not clear whether MCPS was required to conduct a reevaluation, because there is a factual dispute whether the parents disagreed with the May 2012 determination that no such reevaluation was necessary at the time. *See* 34 C.F.R. § 300.303. That dispute need not be resolved because unlike in *D.L.*, once MCPS received the only written request for an evaluation, and prior to the filing of the due process complaint, MCPS offered to conduct a reevaluation of F.C. at school expense that would have constituted the public agency evaluation within the meaning of 34 C.F.R. § 300.502(b). Rather than accept the offer, review the results of such a

reevaluation, and then if necessary seek an IEE to challenge the results, as contemplated by the regulatory regime, the Parents rejected that offer and proceeded to file a due process complaint. In the due process complaint, the Parents initially acknowledged that no agency evaluation had occurred, only to change its position and now argue that the May 12 meeting constituted an evaluation. Thus, upon consideration of the "conduct of both parties," *D.L.*, 548 F. Supp. 2d at 822, where the Parents have not followed the appropriate procedures and declined an offer to conduct a school reevaluation, the Court declines to grant equitable relief requiring MCPS to pay for the IEE.

## CONCLUSION

For the foregoing reasons, the ALJ Decision is affirmed. The Parents' Motion for Summary Judgment is DENIED, and MCPS's Cross-Motion for Summary Judgment is GRANTED. A separate Order shall issue.

Date: June 27, 2016

THEODORE D. CHUANG
United States District Judge